# DORSEY *v.* STATE OF MARYLAND

[No. 9, September Term, 1975.]

*Decided January 9, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Barry Renbaum, Assistant Public Defender*, with whom were *Alan H. Murrell, Public Defender*, and *George E. Burns, Jr., Assistant Public Defender*, on the brief, for appellant.

*Leroy Handwerger, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *Clarence W. Sharp, Assistant Attorney General*, on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court. MURPHY, C. J., and SMITH and LEVINE, JJ., specially concur in the result, and MURPHY, C. J., filed an opinion specially concurring in the result, in which SMITH and LEVINE, JJ., concur at page 661 *infra*.

Following a jury trial in the Criminal Court of Baltimore (Judge J. William Hinkel presiding), the appellant Donald Dorsey was convicted of robbery with a deadly weapon, of assault, and of the use of a hand gun in the commission of a crime of violence. His conviction was affirmed upon direct appeal to the Court of Special Appeals in an unreported per curiam opinion in *Dorsey v. State*, (No. 282, September Term, 1974, decided December 5, 1974). Upon the appellant's petition we granted a writ of certiorari to that Court limited to the issues: (1) Did the trial court err in allowing Detective Richard Simmons, on cross-examination by the State, to answer the question: "And of the cases you have investigated, can you give us any idea of the percentage in which convictions resulted from your arrest?" and (2) If the court committed error in permitting such testimony, was the error prejudicial.

At about 11:30 P.M. on December 27, 1972, Mrs. Doris Fuller, the proprietress of the "Red Bull" carry-out shop, at

2301 East North Avenue, in Baltimore, was confronted by three young men, one of whom was armed with a gun, and was told "This is a stickup." Several patrons were directed to lie on the floor; she was ordered "not to move." One of the robbers searched her pockets and relieved her of a .22 caliber pistol; another of the group, whom she identified at the trial as the appellant, ordered her to open the cash register and he removed its contents. She testified that as the bandits left the premises, the appellant had directed one of his confederates to "Fire on her, man, fire on her." She however was not further harmed. The police were promptly called.

Shortly after the robbery she made a photographic identification of appellant's brother Gary Dorsey as one of her assailants. In her trial testimony, in which she identified the appellant, Mrs. Fuller stated that she had known the appellant and his several brothers — all of whom looked somewhat alike — for a number of years and conceded a confusion with their names. She acknowledged that she had mistakenly identified Gary Dorsey as one of the robbers, but that on December 31, 1972, when her cousin William Alexander Jones, accompanied by the appellant, came to the carry-out shop and returned the gun which had been taken from her during the robbery,[1] she then realized that it was Donald Dorsey and not his brother, Gary, who had participated in the hold-up. This information was reported to the police.

Detective Richard Simmons, of the Baltimore City Police Department, testified that three days after the hold-up he presented Mrs. Fuller with a group of six photographs and from them she identified Gary Dorsey as one of the assailants, that a warrant was issued for his arrest; that he surrendered himself to the police and that when he was confronted by Mrs. Fuller at the police station she retracted her identification and he was released. It was further elicited that when a second group of photographs was shown her on January 5, 1973 she identified the appellant and also

---

1. It was the testimony of the appellant that he had gone to the shop with Jones, at Jones' suggestion, after informing him that he did not take part in the robbery of the carry-out shop.

identified him at a line-up held five months after the robbery.

Detective Simmons, recalled in the trial as a witness for the defense, was permitted — over objection by the State — to relate an exculpatory self-serving statement made by the defendant that, when he interviewed him, following his arrest, he denied any knowledge of the robbery and insisted that he was home because of an illness.[2]

The assistant prosecutor then by way of cross-examination of the detective developed the issues which we here examine. That cross-examination was as follows:

"BY MR. CLARK:

"Q. Detective Simmons, approximately how many armed robbery cases have you investigated in your experience with the Baltimore City Police Department?

"A. Robbery Squad or my experience with the police department?

"Q. Your experience with the police department?

"A. I have to take a very broad guess; I'd say somewhere in the neighborhood of about a thousand.

"Q. Of that approximate one thousand cases can you give us any idea of *how often the person arrested denied any involvement in the crime?*

"A. Percentage wise I would say *about 80% of the time they deny any involvement.*

"Q. *And of the cases you have investigated, can you give us any idea of the percentage in which convictions resulted from your arrest?*

"MR. HORNSTEIN: *Objected to.*

"THE COURT: *Overruled.*

---

2. Before Detective Simmons' testimony as a defense witness, evidence had been submitted on behalf of the appellant which tended to establish such an alibi.

"MR. HORNSTEIN: Your Honor, I am profoundly impressed by Detective Simmons' knowledge and talent; I don't think that the outcome of cases is a yardstick that should guide us in trying evidence.

"THE COURT: Mr. Hornstein, *he is trying to broaden the denial of the defendant. I think he should be permitted to do so.* You can answer the question.

"MR. HORNSTEIN: I would respectfully except. The fact is that there could be testimony regarding denials, but not regarding the outcome of other cases. With respect to the outcome of cases, box scores, I certainly think that is not a yardstick of the, what shall I say, the weight of the evidence.

"THE COURT: You can answer the question.

"A. *I'd say approximately 75 or 80 percent; and I am being very broad with my percentage.*

"MR. HORNSTEIN: I respectfully continue the objection and move all the testimony regarding the outcome be stricken.

"THE COURT: Overruled.' "

(Emphasis added).

The Court of Special Appeals in finding that the ruling by the trial court was erroneous, pointed out that "there was absolutely no factual or statistical basis upon which to formulate such an opinion" and that "the officer's opinion, under the circumstances, was completely unreliable and untrustworthy." Citing Wharton's *Criminal Evidence,* § 151 (13th ed. 1972), the court was further of the view that "even if the estimate had been based upon a wholly sound foundation the question itself would have been objectionable for it sought to inject into the case evidence which was entirely incompetent, irrelevant and extraneous to the issue of the appellant's guilt or innocence." We concur with the conclusion that the testimony was inadmissible.

We cannot agree however with the further conclusion that, though its admission was erroneous, there was "ample

evidence, legally sufficient to support the finding of appellant's guilt and . . . such evidence was not dissipated by the erroneous admission of the officer's testimony," nor can we agree with that court's view, upon the authority of *Chapman v. California*, 386 U. S. 18 (1967), that "the error was harmless beyond all reasonable doubt."

The real test of admissibility of evidence in a criminal case is "the connection of the fact proved with the offense charged, as evidence which has a natural tendency to establish the fact at issue." *MacEwen v. State*, 194 Md. 492, 501, 71 A. 2d 464, 468 (1950); *Pearson v. State*, 182 Md. 1, 13 31 A. 2d 624, 629 (1943). In *Kennedy v. Crouch*, 191 Md. 580, 585, 62 A. 2d 582, 585 (1948), our predecessors stated it to be "an elementary rule that evidence, to be admissible, must be relevant to the issues and must tend either to establish or disprove them." Evidence which is thus not probative of the proposition at which it is directed is deemed "irrelevant." *See* C. McCormick, *Evidence* § 185 at 435 (2d ed. 1972). *See also* 1 J. Wigmore, *Evidence* § 28 at 409-10 (1940 ed.); Wharton's *Criminal Evidence* § 151, *supra*, at 275; 29 Am.Jur.2d *Evidence* § 251 (1967); 31A C.J.S. *Evidence* §§ 158, 159 (1964).

In *Pearson v. State, supra*, our predecessors, in reversing a criminal conviction because of prejudice resulting from evidence which was found to be clearly irrelevant to the main issue, stated: "Evidence of collateral facts, or of [facts] which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute, should be excluded, for the reason that such evidence tends to divert the minds of the jury from the real point in issue, and may arouse their prejudices." In finding that its admission was prejudicial to the appellant, the court pointed out that the evidence "tended to substantiate the witness on an immaterial point in the minds of the jury, and to correspondingly discredit the defendant as to his credibility on the main issue." 182 Md. at 14, 31 A. 2d at 629. *See also Hitzelberger v. State*, 174 Md. 152, 161, 197 A. 605, 609 (1938).

Distinct from its relevancy to be "competent," the

evidence proffered must come within the established principles or rules for its introduction. *See Haile v. Dinnis,* 184 Md. 144, 152, 40 A. 2d 363, 367 (1944); *see also* Wharton's *Criminal Evidence, supra,* § 154; Underhill's *Criminal Evidence* § 11 at 12-15 (5th ed. 1956); 29 Am.Jur.2d *Evidence, supra,* § 257 at 307-08; 31 C.J.S. *Evidence* § 2 at 816 (1964).

The principal issue in the appellant's trial was whether he was one of the perpetrators of the robbery. Detective Simmons' testimony, attempting to establish that a large percentage of those arrested by him for robbery were ultimately proven guilty, undertook to collaterally establish the detective's investigative successes, but had no probative value in tending to establish the proposition in issue — the identity of the appellant as one of the robbers — and was thus patently irrelevant.

Even in those jurisdictions "in which the courts have ruled on the admissibility of [expert] statistical or mathematical evidence offered to show the probability that the defendant was, or was not, the person who committed the alleged crime, or that he was, or was not, connected with the criminal act in some way * * * the court[s] [have] held that it was reversible error to permit an expert witness to [so] testify . . . ." *See* Annot. 36 A.L.R.3d 1194 (1971). *See also People v. Collins,* 68 Cal. 2d 319, 438 P. 2d 33 (1968); *State v. Sneed,* 76 N. M. 349, 414 P. 2d 858 (1966). *See generally,* Finkelstein and Fairley, *A Comment on "Trial by Mathematics,"* 84 Harv.L.Rev. 1801 (1971).

Permitting the detective to relate syllogistically — though imperfectly — before the jury, the high probability of the appellant's guilt, tended to portray the officer as a "super-investigator" and thus clothed his testimony, with a greater weight than that which might have been given to the testimony of the other witnesses. Thus, the jury's basic function of weighing the conflicting evidence in arriving at a conclusion of guilt "beyond a reasonable doubt," was subjected to the counterbalancing effect of the detective's irrelevant and extraneous opinion. Indeed in the absence of any showing of similarity between the investigation which led to the appellant's arrest and those other investigations

which led to the detective's conviction rate, the premise posited before the jury appears to have been invalid.

When the trial court, in overruling the appellant's objection, stated: "[h]e [the prosecutor] is trying to broaden the denial of the defendant," the ruling did nothing to allay, in the minds of the jury, the additional weight which obviously would be given by them to the detective's opinion.

We do not agree with the appellee's contention, under the holdings in *Williams v. Graff*, 194 Md. 516, 522, 71 A. 2d 450, 452-53 (1950), that, since the self-serving exculpatory remarks of the appellant were elicited upon the detective's direct examination, such evidence came within the scope of permissible cross-examination.

Although our predecessors stated in *Williams v. Graff, supra,* that "our rule does not go to the extent of restricting the cross-examination . . . to the specific details inquired into on direct examination, but permits full inquiry into the subject matter entered into," and added that "[w]here a general subject has been entered upon in the examination in chief, the cross-examining counsel may ask any relevant question on the general subject," [3] it is nonetheless a general rule that a "witness cannot be cross-examined as to any fact, which, if admitted, would be wholly collateral, and irrelevant to the matters in issue, for the purpose of contradicting him by other evidence, and in this manner to discredit his testimony." *Sloan v. Edwards,* 61 Md. 89, 105 (1883). More recently in *Smith v. State,* 273 Md. 152, 328 A. 2d 274 (1974), Judge Levine, for the majority of this Court, wrote:

> "Even in the case of subject matter which may be validly pursued on cross-examination, the witness can be impeached by extrinsic evidence only with regard to material facts and not with respect to facts that are *collateral, irrelevant* or *immaterial* to the issues of the case, *Howard v. State, supra,* at 415 (where state's witness in murder case denied

---

**3.** *See also* Shupe v. State, 238 Md. 307, 311, 208 A. 2d 590, 592 (1965) where this statement was repeated.

trafficking in heroin on cross-examination, impeaching witness not allowed to testify that first witness had trafficked in heroin); *Quimby v. Greenhawk*, 166 Md. 335, 345, 171 A. 59 (1934) (where witness in will contest testified that she had never been paid for services rendered to decedent, extrinsic evidence to contradict her disallowed)." 273 Md. at 158-59, 328 A. 2d at 278. (emphasis in original).

*See also Wlodarek v. Thrift*, 178 Md. 453, 470, 13 A. 2d 774, 782 (1940); *City Pass. Ry. Co. v. Tanner*, 90 Md. 315, 320, 45 A. 188, 189 (1900); *Davis v. State*, 38 Md. 15 (1873).

We conclude, as did the Court of Special Appeals, that the collateral evidence elicited from Detective Simmons, concerning his arrest-conviction record, was irrelevant and extraneous to the issue of the appellant's guilt or innocence, and that the trial court's ruling, permitting it, was manifestly erroneous.

We must next inquire as to whether such evidentiary error was "harmless" or prejudicial to the appellant.

Prior to 1835, under the original and orthodox English rule, best exemplified in *Rex v. Ball*,[4] 168 Eng. Rep. 721 (K. B. 1807), an erroneous admission or rejection of evidence was not a sufficient ground for setting aside the verdict and ordering a new trial, unless upon all the evidence it appeared to the judges that the truth had thereby not been reached.

---

**4.** In Rex v. Ball, 168 Eng. Rep. 721 (K. B. 1807), which has been interpreted as establishing the "reasonable possibility" test in England, the King's Bench, in affirming a conviction for forgery, stated: "[w]hether the judges on a case reserved would hold a conviction wrong on the ground that some evidence had been improperly received, when other evidence had been properly admitted that was of itself sufficient to support the conviction, the Judges seemed to think must depend on the nature of the case and the weight of the evidence. If the case were clearly made out by proper evidence, in such a way as to leave no doubt of the guilt of the prisoner in the mind of any reasonable man, they thought that as there could not be a new trial in felony, such a conviction ought not to be set aside because some other evidence had been given which ought not to have been received. But if the case without such improper evidence were not clearly made out, and the improper evidence might be supposed to have had an effect on the minds of the jury, it would be otherwise."

*See also* 1 J. Wigmore, *Evidence* § 21 (1940 ed.) at 365-66.

The Court of Exchequer, in *Crease v. Barnett,* 1 C.M. & R. 919 (1835), announced a rule which in spirit, and in later interpretation, signified that an erroneous ruling created for the excepting and defeated party an automatic right to a new trial. This concept was accepted by other courts for more than a generation and remained the law of England until reformed in 1875. In its most extreme form, that rule created the theory that the rules of evidence formed an "end in themselves," rather than a means to an end. It obtained recognition in a great number of jurisdictions in the United States, although it does not appear to have been embraced by our Court. *See* 1 J. Wigmore, *Evidence* § 21 (1940 ed.) for a history and criticism of the Exchequer rule.

The imprint of the Exchequer rule upon earlier decisions led many legal authorities to conclude that litigants were entitled to an errorless hearing in the trial court. *See* Gibbs, *Prejudicial Error: Admissions and Exclusions of Evidence in the Federal Courts,* 3 Vill.L.Rev. 48, 49 (1957). Today, however, it is firmly established that an accused "has a constitutional right to a 'fair trial' but not necessarily to that seldom experienced rarity, a perfect trial." *State v. Babb,* 258 Md. 547, 552, 267 A. 2d 190, 193 (1970). *See also Lutwak v. United States,* 344 U. S. 604, 619 (1953); *Hopkins v. State,* 24 Md. App. 53, 69-70, 329 A. 2d 738, 748 (1974).

In modern times, appellate review in all jurisdictions is subject to tenets that a judgment may be affirmed, under certain circumstances, despite errors committed in the conduct of the trial.[5] Such rules in their application represent appellate judgments that a retrial is not justified if the error has not affected the rights of the parties. These rubrics, of constitutional, statutory or judicial origin, employ a variety of standards for determining whether a particular error is "harmless," but all require "the resolution of whether the error significantly affected the interests of the complaining party." C. McCormick, *Evidence, supra,* § 183 at 429-30.

---

**5.** *See* Note, *Harmless Constitutional Error: A ReAppraisal,* 83 Harv.L.Rev. 814 (1970).

In those circumstances where a violation of a right protected by the Federal Constitution occurs, the Supreme Court, as the ultimate arbiter in interpreting and implementing constitutional guarantees, has declared such error to be "harmless," where, upon a review of the evidence offered the "[C]ourt [is] able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U. S. 18, 24 (1967).

In *Chapman*, the Supreme Court held that comments by the prosecutor, as well as a jury instruction, concerning the failure of the petitioners to testify, found to be in violation of the holding in *Griffin v. California*, 380 U. S. 609 (1965), were not harmless errors. In rejecting the contention that "all [F]ederal [C]onstitutional errors, regardless of the facts and circumstances, must always be deemed harmful" so as to require an automatic reversal, the Court stated that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." (386 U. S. at 21-22). Drawing upon language in *Fahy v. Connecticut*, 375 U. S. 85 (1963) that "[t]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" (375 U. S. at 86-87), the Court pointed out that "[a]lthough our prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error,[6] this statement in *Fahy* itself belies any belief that all trial errors which violate the Constitution automatically call

---

**6.** The Court cited its decisions in Payne v. Arkansas, 356 U. S. 560 (1958) (coerced confession); Gideon v. Wainwright, 372 U. S. 335 (1963) (denial of the right to representation by counsel at trial); and Tumey v. Ohio, 273 U. S. 510 (1927) (right to be tried by an impartial judge).

*See also* Burgett v. Texas, 389 U. S. 109, 115 (1967) in which the Court described the admission into evidence of a prior conviction obtained pursuant to the denial of the *Gideon* right to representation as "inherently prejudicial." *See as well* Loper v. Beto, 405 U. S. 473, 483 (1972) where "the use of convictions constitutionally invalid under Gideon v. Wainwright to impeach [the] defendant's credibility deprive[d] him of due process of law," and in the circumstances of the case there was "little room for a finding of harmless error. . . ."

for reversal. . . . An error in admitting plainly relevant evidence which *possibly influenced the jury adversely* to a litigant cannot, under *Fahy*, be conceived of as harmless." 386 U. S. at 23-24. (emphasis added).

The *Chapman* Court observed that none of the "harmless error" statutes or rules in effect in the states, similar to that set forth in 28 U.S.C. § 2111, facially "distinguishes between federal constitutional errors and errors of state law or federal statutes and rules," but all "serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." 386 U. S. at 22.[7]

*See also Bumper v. North Carolina*, 391 U. S. 543 (1968) where the Supreme Court similarly held that a violation of the Fourth Amendment was not "harmless error," upon finding that the evidence obtained through such violation, had been the turning point in identifying the defendant. 391 U. S. at 550.

In *Harrington v. California*, 395 U. S. 250 (1969), *Schneble v. Florida*, 405 U. S. 427 (1972), *Milton v. Wainwright*, 407 U. S. 371 (1972) and *Brown v. United States*, 411 U. S. 223 (1973), the Supreme Court invoked the *Chapman* test in finding "harmless error." In each of these cases, that Court, upon an independent review of the record, found the properly admitted evidence to have been "so overwhelming," and the prejudicial effect of the erroneously admitted evidence so insignificant by comparison, or to have been cumulative, that it was able to conclude, beyond a reasonable doubt, that the erroneously admitted evidence — even though of constitutional import — constituted "harmless error."

---

7. 28 U.S.C. § 2111 provided that "[o]n the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." The section is substantially similar to the former provision in Maryland Code (1957, 1968 Repl. Vol.) Art. 5, § 16, which was repealed, by ch. 2, § 2 of the Acts of 1973 (1st Sp. Sess.), effective January 1, 1974, since the principle set forth in the statute was believed to be well embraced in the case law of this state.

These decisions by the Supreme Court as to errors of constitutional significance were heralded by that Court's decision in *Kotteakos v. United States*, 328 U. S. 750 (1946), where it formulated a criterion for determining whether error, resulting from an erroneous trial court instruction, was "harmless." In reviewing the case under the "harmless error" statute then codified in 28 U.S.C. § 391,[8] that Court, recognizing that it is not an appellate court's function to determine guilt or innocence, pointed out: "[b]ut this does not mean that the appellate court can escape altogether taking account of the outcome. To weigh the error's effect against the entire setting of the record without relationship to the verdict or judgment would be almost to work in a vacuum." 328 U. S. at 763-64. The Court postulated that "the question is, not were they [the jury] right in their judgment, regardless of the error, or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had, upon the jury's decision." 328 U. S. at 764. Mr. Justice Rutledge, writing for the majority, in articulating a rule for the resolution of the impact of errors upon the verdict, in criminal proceedings, stated:

"If, when all is said and done, the conviction is [such] that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand. . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, *that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.* The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. *It is rather, even so,*

8. 28 U.S.C. § 391, the forerunner to 28 U.S.C. § 2111, cited in Chapman v. California, 386 U. S. 18, 22 (1967) provided that: "On the hearing of any appeal, certiorari, writ of error, or motion of new trial, in any case, civil or criminal, the [C]ourt shall give judgment after an examination of the entire record before the [C]ourt, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." See also n. 7, *supra*.

*whether the error itself had substantial influence.*
If so, or if one is left in grave doubt, the conviction cannot stand." 328 U. S. at 764-65. (emphasis added; footnote omitted).

A test substantially similar to that later embraced by the Supreme Court in *Kotteakos, supra,* was set forth by Judge Offutt, in an opinion concurred in by Judges Adkins, Digges and Walsh, in *Dobbs v. State,* 148 Md. 34, 129 A. 275 (1925).[9] There, Judge Offutt wrote:

"[W]hen the errors are of such a character, and so interwoven with the case, as to lead a fair and impartial mind, trained and experienced in judicial investigation, upon an examination of the whole case and all the rulings involved therein, to the conclusion that there is *a reasonable probability that such errors may have affected the determination of the case,* they are prejudicial and reversible." 148 Md. at 48-49, 129 A. at 281 (emphasis added).[10]

As we observed in *State v. Babb, supra,* at 551, 267 A. 2d at 192, antecedent to the enunciation of the test set forth in *Chapman v. California, supra,* and its progeny, the decisions of this Court are "replete with cases holding that 'harmless error,' error which does not affect the final outcome of the case, should not be grounds for reversal."

---

**9.** In Dobbs v. State, 148 Md. 34, 129 A. 275 (1925), the Court, upon a finding by a majority that reversible error had been committed, reversed the conviction by a per curiam order. Judges Offutt, Adkins and Digges found reversible error in a number of the rulings. Judge Walsh agreed that one of those errors was erroneous but not a ground for reversal. Judge Urner, in concurring in the result, agreed that one of the errors mandated reversal. Chief Judge Bond filed a dissenting opinion which was concurred in by Pattison and Parke, JJ.

**10.** The test there predicated upon a "reasonable probability" that such error may have affected the determination of the case seems to be the one applied in civil cases, where the burden of proof is by a preponderance of the evidence. rather than in criminal cases, where the test is proof beyond a reasonable doubt. *See* S. Saltzburg, "The Harm of Harmless Error," 59 Va.L.Rev. 988, 1014 (1973), where it is pointed out that Mr. Justice Black, in Chapman v. California, 386 U. S. 18 (1967) "rejected the California test for harmless error, which required a showing that it was reasonably *probable* that an error affected the verdict, rather than that it was reasonably *possible.*"

In those pre-*Chapman* criminal cases where error, mandating a reversal had been found, this Court, without formulating any precise criteria to be applied in the decisional process, and without citation of the test posited in *Dobbs v. State, supra,* has traditionally applied the same test as in civil cases [11] and has based its rulings upon a determination that the error was prejudicial to the appellant. *See e.g. Ferrell v. Warden,* 241 Md. 432, 434, 216 A. 2d 740, 742 (1966); *Ramsey v. State,* 239 Md. 561, 566, 212 A. 2d 319, 322 (1965); *Pearlman v. State,* 232 Md. 251, 262, 192 A. 2d 767, 773-74 (1963) *cert. denied* 376 U. S. 943, (1964); *Coby v. State,* 225 Md. 293, 296, 170 A. 2d 199, 201 (1961); *Pickman v. State,* 170 Md. 421, 426, 185 A. 120, 122 (1936); and *Balto. & York Turnp. Co. v. State,* 63 Md. 573, 581 (1885).

In *Duncan v. State,* 190 Md. 486, 491, 58 A. 2d 906, 908 (1948) as in *Pearson v. State, supra,* the Court found the erroneously admitted evidence to be such "as to be likely to confuse and mislead the jury and prejudice them against [the] appellant." In *Bruce v. State,* 218 Md. 87, 96, 145 A. 2d 428, 432 (1958), it was held that the error was prejudicial, since otherwise the testimony, if believed, "might have meant a verdict of not guilty."

The same requirement — a determination of prejudice — has been applied when the errors were of constitutional dimension. *See Midgett v. State,* 216 Md. 26, 36-37, 139 A. 2d 209, 214 (1958) (communication with the jury); *Johnson v. State,* 193 Md. 136, 156-57, 66 A. 2d 504, 512 (1949) (illegally seized evidence); *Jackson v. State,* 209 Md. 390, 397, 121 A. 2d 242, 245-46 (1956) (coerced confession); and *Capparella v. State,* 235 Md. 204, 208-09, 201 A. 2d 362, 364-65 (1964) (illegally seized evidence).

Where erroneously admitted evidence has been cumulative, such admission has been held to be "harmless error." *See Jones v. State,* 205 Md. 528, 534-35, 109 A. 2d 732,

---

11. *See* Rippon v. Mercantile-Safe Deposit Company, 213 Md. 215, 222, 131 A. 2d 695, 698 (1957), where it was pointed out that, as to civil cases, "it is the policy of this Court not to reverse for harmless error, and the burden is on the appellant in all cases to show prejudice as well as error. *See also* Kapiloff v. Locke, 276 Md. 466, 343 A. 2d 251 (1975), and cases therein cited.

736 (1954); *Linkins v. State,* 202 Md. 212, 224, 96 A. 2d 246, 252 (1953); and *Kiterakis v. State,* 144 Md. 81, 83, 124 A. 401, 402 (1923).

An analysis of the holdings in such criminal cases demonstrates that in making an appraisal of the effect of error, the determinative factor, as applied by this Court, has been whether or not the erroneous ruling, in relation to the totality of the evidence, played a significant role in influencing the rendition of the verdict, to the prejudice of the appellant. In this respect our approach has been in accord with the test applied by the Supreme Court.

The most significant difference between the review used in our pre-*Chapman* criminal cases and the principles laid down in that case, relates to the burden of persuasion at the reviewing level. Our cases traditionally have required that the appellant, as the aggrieved party, establish not only error, but demonstrate as well some resultant substantial harm and prejudice. *See Bristow v. State,* 242 Md. 283, 286, 219 A. 2d 33, 34-35 (1966); *Pearlman v. State, supra,* at 262, 192 A. 2d at 773-74; *Pickman v. State, supra,* at 426, 185 A. at 122; *Avery v. State,* 121 Md. 229, 232, 88 A. 148, 149 (1913). *See also Edmonds v. State,* 5 Md. App. 132, 140, 245 A. 2d 618, 622 (1968), *cert. denied* 252 Md. 730 (1969); *Halstead v. State,* 4 Md. App. 121, 123, 241 A. 2d 439, 440 (1968); *Borman v. State,* 1 Md. App. 276, 279, 229 A. 2d 440, 441-42 (1967). In *Chapman,* the Supreme Court, citing 1 J. Wigmore, *Evidence* § 21 (3d ed. 1940) for the premise that "the original common law harmless error rule put the burden on the beneficiary of the error, either to prove that there was no injury, or to suffer a reversal of his erroneously obtained judgment," placed the burden upon the prosecution to demonstrate "beyond a reasonable doubt" that the demonstrated error did not contribute to the conviction. But that Court pointed out that "[t]here is little, if any, difference between our statement in *Fahy v. Connecticut* about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not

contribute to the verdict obtained." 386 U. S. at 24. *See Schneble v. Florida, supra*, at 432.

In the first post-*Chapman* case to visit this Court, *Veney v. State*, 251 Md. 159, 246 A. 2d 608 (1968), *cert. denied* 394 U. S. 948 (1969), it was held that, "[a]ssuming, *arguendo*, that the remarks by the State's Attorney were tantamount to a comment that the appellant failed to take the stand," as in *Griffin v. California, supra*, the instruction given by the trial court "cure[d] the alleged improper remarks" and that, under the holdings in *Chapman v. California, supra*, if there were in fact [constitutional] error, "such error [was] harmless beyond a reasonable doubt." 251 Md. at 180-81, 246 A. 2d at 621.

In *State v. Babb, supra*, on certiorari to the Court of Special Appeals,[12] the criterion stated in *Chapman* was applied in finding evidentiary error to be "harmless." In that case, the appellee, convicted of "manslaughter by automobile," in a non-jury trial, testifed upon direct examination that he had never been convicted of operating a vehicle while under the influence of alcohol. Upon cross-examination, over objection, he was required to disclose that he had been convicted of public drunkenness. Concluding that the totality and cumulative effect of the other competent evidence discounted the presence of prejudice from such ruling, in a non-jury case, this Court, on the authority of *Chapman*, held "that the error in admitting the evidence of the prior conviction for drunkenness, assuming, arguendo, that it was error, 'was harmless beyond a reasonable doubt.' " 258 Md. at 552, 267 A. 2d at 193.

In *Younie v. State*, 272 Md. 233, 322 A. 2d 211 (1974),[13] we held that the admissibility into evidence of the fact that the appellant, when interrogated by the police, had "refused to answer" a number of incriminating questions, was in violation of the protections afforded him by the Fifth and Sixth Amendments and that such error was not "harmless

---

**12.** Babb v. State, 7 Md. App. 116, 253 A. 2d 783 (1969).

**13.** On certiorari to the Court of Special Appeals in Younie v. State, 19 Md. App. 439, 311 A. 2d 798 (1973).

beyond a reasonable doubt." Judge Digges, writing for this Court in *Younie*, pointed out that in *Schneble v. Florida*, *supra*, the Supreme Court "though it quoted the language of *Harrington*, rephrased the harmless error rule in holding that constitutional error would not be held harmless if 'there is a *reasonable possibility* that the improperly admitted evidence contributed to the conviction." He concluded, however, that this rephrasing "has no substantial significance in our disposition of this case because '[t]here is little, if any, difference between . . . [asking] "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " 272 Md. at 246, 322 A. 2d at 218. (emphasis added). *See also Chapman v. California*, *supra*, at 24. *See* as well S. Saltzburg, *"The Harm of Harmless Error,"* 59 Va.L.Rev. 988, 1021, n. 112 (1973).

Concerning the criteria to be applied in cases of constitutional error, Judge Digges stated:

> "What is of importance, from an examination of the cases which discuss harmless error, is the realization that if the error goes to a substantial constitutional right (*e.g.* right to counsel — sixth amendment, right not to self-incriminate — fifth amendment) then unless the State can prove beyond a reasonable doubt, as the prosecution did in *Milton v. Wainwright*, 407 U. S. 371, 92 S. Ct. 2174, 33 L.Ed.2d 1 (1972) (where an invalid confession accompanied three valid ones and other substantial evidence of guilt), that a tainted confession *in no way influenced the verdict* such that the defendant would undoubtedly have been found guilty even if that evidence had not been received, its employment will always be error. Conversely, if the State can show beyond a reasonable doubt that the violation was technical in nature, as well as that the erroneously admitted

> evidence was merely cumulative, and that there was other overwhelming and largely uncontroverted evidence properly before the trier of fact, then the error would be harmless. *Brown v. United States,* 411 U. S. 223, 93 S. Ct. 1565, 36 L.Ed.2d 142 (1973) (concerned with a *Bruton* violation). See also annotation to *Schneble v. Florida, supra,* contained in 31 L.Ed.2d 921." 272 Md. at 246-47, 322 A. 2d at 218 (emphasis in original).

Upon our review of the record, we there observed that besides Younie's statement, and evidence which proved little more than that a murder had been committed by three men, the principal incriminating testimony against the appellant had been that given by a woman friend, whose credibility had been significantly impugned upon cross-examination. Expressing the conclusion that in order to find the error harmless, "the good evidence standing alone must be sufficient to convict, and [that] we must be convinced beyond a reasonable doubt that the jury was in no way influenced by the bad," we held that we were not convinced "that the tainted confession [had] *in no way influenced the jury's verdict.*" 272 Md. at 247-48, 322 A. 2d at 219. (emphasis added).

Later, in *Smith v. State,* 273 Md. 152, 328 A. 2d 274 (1974),[14] where it was held that the exclusion of proffered testimony constituted prejudicial error, this Court, in reversing the Court of Special Appeals, took notice that the lower Court had, by *dicta,* expressed the view that had there been error, it "would have been harmless beyond a reasonable doubt under *Chapman v. California,*" and expressed the view: "that *Chapman* applied only to violations of federal constitutional rights, and that the issue here does not rise to that level. Hence the *Chapman* doctrine would appear inapplicable. In Maryland therefore, the test is whether the erroneous exclusion of evidence results in

---

14. On certiorari to the Court of Special Appeals in Smith v. State, 20 Md. App. 254, 315 A. 2d 76 (1974).

prejudice to the complaining party. . . ." 273 Md. at 163, n. 2, 328 A. 2d at 281, n. 2.

Most recently in *Johnson v. State,* 23 Md. App. 131, 326 A. 2d 38 (1974), the Court of Special Appeals found the error in admitting hearsay testimony, "the only evidence which connected the appellant with the crime other than his much disputed prior statements [implicating himself]" to have been prejudicial. In concluding that the error was not "harmless beyond a reasonable doubt," that Court, citing *Younie v. State, supra,* stated: "Where trial is by a jury, *all reasonable doubts* as to the effect of erroneously admitted evidence upon the jury's determination of guilt must be resolved in favor of the objecting party." 23 Md. App. at 138-39, 326 A. 2d at 42-43. (emphasis added). Upon our determination, pursuant to Maryland Rule 811 b 3, that "no error of law appears in the decision," we adopted the opinion of the Court of Special Appeals and affirmed by a *per curiam* opinion in *State v. Johnson,* 275 Md. 291, 339 A. 2d 289 (1975). We thus embraced, without discussion, the "beyond a reasonable doubt" test as enunciated in *Chapman,* and applied in *Younie,* to a case involving nonconstitutional evidentiary error.

As we see it, there is no sound reason for drawing a distinction between the treatment of those errors which are of constitutional dimension and those other evidentiary, or procedural, errors which may have been committed during a trial. Although the Amendments to the United States Constitution are commonly considered a source of fair judicial procedure, other nonconstitutional evidentiary and procedural rules, signifying state policy with respect to judicial fairness, are often a defendant's primary source of protection. An evidentiary or procedural error in a trial is bound, in some fashion, to affect the delicately balanced, decisional process. The abnegation of a particular rule upon which the defense intended to rely may often inflict more damage than initially apparent; a meritorious line of defense may be abandoned as a result; an important witness may not be called; strategies are often forsaken. The future course of the trial inevitably must be changed to

accommodate the rulings made. It is the impact of the erroneous ruling upon the defendant's trial and the effect it has upon the decisional process which is of primary concern, not whether the error is labelled as constitutional or nonconstitutional. Invariably, a number of constitutional rights, be they of federal or state origin, are inexorably intertwined with state rules of evidence and procedure. Regardless of the generic nature of the error, we believe that upon appellate review, a uniform test should be applied in all criminal cases to determine the effect the error may have had on the verdict. *See* S. Saltzburg, *"The Harm of Harmless Error," supra,* at 989-90, 1021-22. No such distinction was applied in either *State v. Babb, supra,* or in *State v. Johnson, supra,* both of which involved evidentiary rulings.

Indeed, requiring the beneficiary of such error to demonstrate, beyond a reasonable doubt, that the error did not contribute to the verdict — and is thus truly "harmless" — is consistent with the test required in criminal cases for a resolution of guilt. The Supreme Court, in *In re Winship,* 397 U. S. 358 (1970) held that, in order to satisfy the constitutional requirements of due process, a criminal conviction must be based upon proof beyond a reasonable doubt. It would be incompatible, under the *Winship* standard, designed to prevent criminal convictions if there is a reasonable doubt in the minds of the jurors, to permit a circumvention of that evidentiary standard and the application, upon appellate review, of a lesser test, allowing a conviction to stand, where a trial court has been found to have violated evidentiary or procedural rules which themselves might have influenced the jury in connection with such requisite degree of proof. Logic supports the view that an appellate court should not arrive at a conclusion about the impact of an error upon a jury verdict, with any less degree of certainty than that demanded in the trial process. *See* S. Saltzburg, *"The Harm of Harmless Error," supra,* at 989, 992.

Embracing the requirement laid down in *Chapman,* that the beneficiary of error be required to demonstrate, beyond a reasonable doubt, that such error did not contribute to the

conviction, and engrafting that precept upon the principles and mechanics which have antecedently and traditionally been applied in resolving whether the rights of a defendant in a criminal case were prejudiced by the error, we adopt the criteria enunciated in *Chapman* and applied by the Supreme Court in its progeny, as well as by this Court in *Younie v. State, supra,* as appropriate for determining in criminal cases whether error, be it of constitutional significance or otherwise, was "harmless." *See State v. Johnson, supra.* To this extent, the observation noted in *Smith v. State, supra,* at 163, n. 2, 328 A. 2d at 821, n. 2, must be discarded.

We conclude that when an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of — whether erroneously admitted or excluded — may have contributed to the rendition of the guilty verdict.[15]

Applying this test to the facts in this case, upon our own independent review of the entire record, we are not persuaded beyond a reasonable doubt that Detective Simmons' testimony, concerning his arrest-conviction record, which posited before the jury the probability of the appellant's guilt, by evidence irrelevant and extraneous to the issue of the appellant' guilt or innocence, did not contribute to the guilty verdict returned against Dorsey. It was thus not "harmless" error.

The testimony offered through the detective was certainly not "cumulative." *See Harrington v. California, supra; Brown v. United States, supra; Jones v. State, supra;*

---

**15.** By the adoption of such criteria to be applied in criminal cases, we do not suggest that the well-engrafted test as to "harmless error," which has been applied in appellate review of civil cases, should be disturbed. We point out that in contrast to the burden of proof in criminal proceedings, a plaintiff, in a civil case, is required to sustain the burden of proof "by a preponderance of evidence." *See* n. 10, *supra.*

*Linkins v. State, supra; Kiterakis v. State, supra.* Unlike in *State v. Babb, supra,* the appellant was tried by a jury of laymen, and not by a judge, as under the facts there "capable of evaluating the materiality of the evidence," and of sifting-out that which should not have been admitted at trial. The evidence tending to establish Dorsey's guilt, indubitably cannot be termed "overwhelming," as in *Harrington v. California, supra, Schneble v. Florida, supra, Brown v. United States, supra* and *Milton v. Wainwright, supra.*

Independent of the detective's testimony, the appellant's conviction rested exclusively upon the in-court identification by Mrs. Fuller, which identification — in view of her prior erroneous designation of the appellant's brother as one of her assailants — would, under the circumstances, have to be termed just as "equivocal" as that found in *Bumper v. North Carolina, supra,* where two different persons had been identified at two different times. In view of the appellant's exculpatory statement, his undisguised conduct in returning to the carry-out shop, three days after the robbery, in company with the prosecutrix' cousin, when Mrs. Fuller's stolen pistol was returned,[16] coupled with the alibi evidence tending to confirm the appellant's confining illness at the time of the robbery, we conclude that there is a reasonable possibility that the detective's testimony of collateral facts "tend[ing] to divert the minds of the jury from the real point in issue and [which] may arouse their prejudices," (*see Pearson v. State, supra,* at 13, 31 A. 2d at 629; *Hitzelberger v. State,* 174 Md. 152, 161, 197 A. 2d 605, 609 (1938)), did play a contributing role in the rendition of the guilty verdict. As we sense it, notwithstanding the appellant's exculpatory statement and the other evidence tending to exonerate him, the prosecution resorted to patently inadmissible testimony in an attempt to establish a mathematical probability of his guilt, and such inadmissible evidence thus became the turning-point in influencing the jury's verdict.

16. There was testimony that Mrs. Fuller's cousin, William Alexander Jones, had obtained Mrs. Fuller's stolen pistol from an unidentified stranger.

We think it worthwhile to repeat here the caveat set forth in *Younie v. State, supra,* that the harmless error rule "has been and should be carefully circumscribed for the reasons given in *People v. Jablonski,* 38 Mich. App. 33, 38-39, 195 N.W.2d 777, 780 (1972), where it is said that:

'Continued expansion of the harmless error rule will merely encourage prosecutors to attempt to get such testimony in, since they know that, if they have a strong case, such testimony will not be considered to be reversible error, yet if they have a weak case, they will use such testimony to buttress the case to gain a conviction and then hope that the issue is not raised on appeal.' " 272 Md. at 248, 322 A. 2d at 219.

> *Judgment of the Court of Special Appeals reversed; case remanded to that court with instructions to remand the case to the Criminal Court of Baltimore for a new trial; costs to be paid by the Mayor and City Council of Baltimore.*

*Murphy, C. J., specially concurring:*

I agree with the majority that the testimony in question was improperly admitted into evidence, that the error was plainly prejudicial, and that a new trial is mandated. I cannot, however, subscribe to the majority's view that on appellate review of criminal convictions, justice somehow dictates that there must be one uniform standard for testing whether an error committed at the trial was harmless, without regard to whether the error was of constitutional dimension or not, and that that test is as set forth by the Supreme Court in *Chapman v. California,* 386 U. S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967), a case involving an error of constitutional magnitude. There, the Supreme Court held that unless the appellate court could declare a belief beyond a reasonable doubt that there was no reasonable possibility

that the error might have contributed to the conviction, it could not be deemed harmless.

In *Chapman*, the Supreme Court pointed out that none of the numerous state or federal harmless-error statutes or rules prohibiting appellate courts from reversing judgments for errors which did not affect the substantial rights of the parties distinguished between errors of constitutional and nonconstitutional dimension. These rules and statutes, the Supreme Court said in *Chapman*, serve "a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." 386 U. S. at 22. In concluding that the federal constitution required a more stringent test in cases involving federal constitutional error, the Court in *Chapman* did not purport to override its own authority governing the test applicable to errors of nonconstitutional magnitude, as contained in *Kotteakos v. United States*, 328 U. S. 750, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946). That case, as the majority properly notes, enunciates the test in terms far less stringent than those outlined in *Chapman*, viz., if an appellate court is unable to conclude "with fair assurance" that "the judgment was not substantially swayed by the error" and "that substantial rights were . . . affected," it could not find the error harmless. 328 U. S. at 764-65.

Our own cases, set out in the opinion of the majority, have always closely followed the rationale of *Kotteakos*. We have in effect said in cases involving nonconstitutional error that the determinative factor is whether the erroneous ruling, in relation to the totality of the evidence, played a significant role in influencing the rendition of the verdict to the prejudice of the defendant. That this test is far less exacting than the constitutional standard contained in *Chapman* is clear to me, as indeed it was to the majority in 1974 when, in *Smith v. State*, 273 Md. 152, 328 A. 2d 274, a case involving error not of constitutional dimension, the Court observed that "*Chapman* applies only to violations of federal constitutional rights, . . . that the issue here does not rise to that level . . . [and that] the test [for determining harmless

error in nonconstitutional cases] is whether the erroneous exclusion of evidence results in prejudice to the complaining party." 273 Md. at 163. It is true that in *State v. Johnson*, 275 Md. 291, 339 A. 2d 289 (1975) and *State v. Babb*, 258 Md. 547, 267 A. 2d 190 (1970), we did not give explicit recognition to the fact that a distinction exists between constitutional and nonconstitutional error in applying our rules for testing the existence of harmless error; in neither of those cases, however, was the issue raised and at most they represent an indiscriminate failure to apply the proper verbiage as recognized in *Smith v. State, supra.*

The majority makes a grave mistake in my judgment when it fails to recognize the difference between the federal constitutional harmless-error rule mandated by *Chapman* and its progeny and the less exacting harmless-error rule so long applicable to errors not of constitutional magnitude. The distinction, and the reasons for it, have not escaped courts in other jurisdictions. Indeed, the Court of Appeals of New York, in *People v. Crimmins*, 326 N.E.2d 787, 36 N.Y.2d 230 (1975), recently expressed views similar to those which I have just outlined. Other courts are in complete accord. *See United States v. Arias-Diaz*, 497 F. 2d 165 (5th Cir. 1974); *United States v. Harbolt*, 491 F. 2d 78 (5th Cir. 1974); *Chase v. Crisp*, 523 F. 2d 595 (10th Cir. 1975); *United States v. Lee*, 489 F. 2d 1242 (D.C. Cir. 1973); *United States v. Harpel*, 493 F. 2d 346 (10th Cir. 1974); *United States v. Jackson*, 482 F. 2d 1167 (10th Cir. 1973); *United States v. Daughtry*, 502 F. 2d 1019 (5th Cir. 1974); *United States v. Bettenhausen*, 499 F. 2d 1223 (10th Cir. 1974); *United States v. Steinkoenig*, 487 F. 2d 225 (5th Cir. 1973).

I am authorized to state that Judges Smith and Levine concur in the views here expressed.