912 A.2d 637

**Saturio Grogrieo FIELDS**

v.

**STATE of Maryland.**

**No. 34, Sept. Term, 2006.**

Court of Appeals of Maryland.

Dec. 8, 2006.

Michael R. Malloy, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

We granted certiorari in this case to consider whether the Court of Special Appeals erred in holding that petitioner's nickname, "Sat Dogg," which was displayed on a television monitor above a bowling lane, was not hearsay. Because we shall hold that even if the court erred with respect to the evidentiary issue, the error was harmless beyond a reasonable doubt, we do not reach the issue.

Petitioner, Saturio Grogrieo Fields, was indicted by the Grand Jury for Prince George's County on one count of first degree murder, two counts of attempted murder, and two counts of first degree assault. He proceeded to trial before a jury and was convicted of first degree murder and two counts of first degree assault. He was sentenced to the Division of Corrections for the first degree murder charge to life without parole, for first degree assault, twenty years to be served consecutively with his sentence for life without parole, and for the second first degree assault charge, to an additional twenty years, to be served consecutively with his sentence of life without parole.

Petitioner's convictions stem from the shootings of three men on the night of May 16–17, 2003. The three victims, Tyneal Bussey, Early Eborn, and Rozier Davis, were among a group of employees from a local supermarket who had gone bowling at the AMF bowling alley in Clinton, Maryland. Bussey was shot in the chest and died. Eborn was shot in the abdomen and Davis was shot in the arm; Eborn and Davis survived. The State's evidence showed that, on the night in question, petitioner became involved in an altercation with Bussey inside the bowling alley and asked Bussey to step outside. Petitioner, Bussey, and several other supermarket employees went outside. Two witnesses, Jermaine Bowlding and Christine Chandler, testified that outside of the bowling alley, petitioner reached into a white car with side panel advertisements and displayed a rifle. When Bussey reached the doorway, petitioner fired the weapon, killing Bussey and seriously injuring Davis and Eborn.

Detectives displayed photographic arrays to Bowlding and Chandler. Out of an array of six black and white photographs, Jermaine Bowdling selected the photograph of petitioner and stated, "That's the shooter." Mr. Bowdling also identified petitioner at trial as the shooter. He testified that he remembers facials because as a person who works in security, "I am a very observant person when I am in a public place. So I always looked around and check my environment out."

Two detectives displayed two photographic arrays to Christine Chandler. One was an array of black and white photographs; the second contained color photographs. Ms. Chandler selected photographs of petitioner from both arrays, stating: "This is the guy that went to the car and got the gun and offered Tyneal outside to fight." Ms. Chandler also identified petitioner in court, saying that she had no doubt about the identification.

In the course of their investigation, the police seized physical evidence linking petitioner to the shootings. Police recovered two shell casings at the scene of the crime and a bullet from the clothing of one of the victims. The night after the shootings, police seized a rifle from under the bed of petitioner's friend, Melody Holmes. Ms. Holmes testified that petitioner placed the rifle under her bed on the night of the shootings. Another witness, Tiffany Silas, was at Holmes' apartment on the night of the shootings, and testified that she was in the room when petitioner entered with the rifle and placed it under the bed. Police also recovered a sweater and shoes at the AMF bowling alley which belonged to petitioner. Ms. Holmes testified that the sweater and shoes recovered from the bowling alley belonged to petitioner.

Ms. Holmes and Ulysses Moody, petitioner's employer at the time of the shootings, testified that petitioner drove a white Honda Accord, similar to the car described at the scene of the shootings. Both noted that petitioner's car displayed insignias on the sides advertising his place of employment.

Gary Phillips, a ballistics expert, testified on behalf of the State that the gun recovered from Holmes' apartment was a Winchester carbine short-barreled rifle, model 94, and that the bullet recovered from the victim's clothing could have been fired from the weapon. He stated that based on the firearms examination and test firings he conducted, that the shell casings found at the crime scene were definitively fired from that gun.

The State conducted DNA analysis on evidence recovered from the sweater found at the bowling alley. Julie Kempton,

the DNA analyst, testified that although the sweater contained more than one source of DNA, petitioner was a major source of the primary DNA found on the sweater.

The evidentiary issue which was the subject of the appeal before the Court of Special Appeals was that petitioner used the nickname "Sat Dogg" and that the name "Sat Dogg" appeared on a monitor above one of the lanes at the AMF bowling alley on the night of the shootings. Detective Ismael Canales recorded information located on the scoring monitors at each of the bowling lanes at the AMF alley. One of the monitors displayed the name "Sat Dogg." Both Holmes and Moody testified that petitioner used the nickname "Sat Dogg" or "Sat." Pre-trial, petitioner moved *in limine* to exclude the evidence that the name Sat Dogg appeared above the bowling lanes on the grounds that it was inadmissible hearsay. The court denied the defense's motion to exclude the evidence. At trial, the State entered into evidence a picture of a tattoo on petitioner's arm, showing a dog topped by the word "Sat."

Petitioner's defense at trial was that the State did not prove his guilt beyond a reasonable doubt and his theory was that he was not involved in the crime. Petitioner's fiancee, Natasha Williams, testified that she had assisted petitioner when his car broke down and that the car was inoperable at the time of the shootings. In closing argument, defense counsel argued that petitioner's car could not have been at the bowling alley because it had broken down the week preceding the shootings.[1]

Petitioner was convicted and noted a timely appeal to the Court of Special Appeals.[2] The Court of Special Appeals, on

---

1. Ulysses Moody, petitioner's employer at the time of the shootings, refuted this theory, stating that petitioner drove his white Honda Accord to work the day after the shooting.

2. On May 25, 2005, the Court of Special Appeals, in an unreported opinion, affirmed the judgment of the Circuit Court. This Court granted petitioner's petition for writ of certiorari, and summarily remanded the case to the Court of Special Appeals for reconsideration in light of

remand from this Court, considered whether the Circuit Court erred in admitting into evidence the notes about names displayed on television screens above the bowling alley lanes. *Fields v. State*, 168 Md.App. 22, 895 A.2d 339 (2006). The majority of the panel held that the evidence was not hearsay because it "was not an implied assertion of the factual proposition that the appellant was present at the bowling alley." *Id.* at 38, 895 A.2d at 348. The court noted that the nickname had probative value as circumstantial evidence because "it had a tendency to show that the appellant was a bowler at the bowling alley that night, and therefore was present at the location of the shootings." *Id.* The court concluded that because the evidence was not an "assertion" under Maryland Rule 5–801(a), it was not a "statement" under that subsection and was therefore not hearsay under Maryland Rule 5–801(c). *Id.*

In dissent, Judge Kenney would have reversed. He stated that based on *Bernadyn v. State*, 390 Md. 1, 887 A.2d 602 (2005) and *Stoddard v. State*, 389 Md. 681, 887 A.2d 564 (2005), petitioner's nickname on a television monitor could not "be treated merely as circumstantial evidence from which a fact finder might conclude that appellant was present at the bowling alley on the night of the incident, a fact that appellant denies." *Fields*, 168 Md.App. at 49, 895 A.2d at 355 (Kenney, J. dissenting). Judge Kenney concluded that the nickname served no other "purpose except to assert that appellant was obviously present and bowling . . . on the night in question." *Id.* at 50, 895 A.2d at 355.

 We granted petitioner's second petition for writ of certiorari. *Fields v. State*, 393 Md. 245, 900 A.2d 751 (2006). We need not determine whether the testimony of Detective Canales was inadmissible based on *Bernadyn*, or even if the evidence is distinguishable, because even if it was hearsay and not admissible, any error was harmless beyond a reasonable

---

*Bernadyn v. State*, 390 Md. 1, 887 A.2d 602 (2005). *Fields v. State*, 390 Md. 513, 889 A.2d 1025 (2006).

doubt. In Maryland, an error is harmless if "a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict." *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976). *See also, State v. Logan,* 394 Md. 378, 388, 906 A.2d 374, 380 (2006). The collective effect of the other evidence in this case so outweighs any possible prejudice resulting from the admission of the questioned evidence that there is no reasonable possibility that the jury would have reached a different result had that evidence been excluded.

Aside from evidence of petitioner's nickname on the bowling alley screen, the State established, beyond a reasonable doubt, that petitioner was present at the bowling alley on the night in question, and that he was the person who killed Bussey and injured Eborn and Davis. Two additional witnesses testified that petitioner hid the murder weapon under Holmes' bed, a location where police found it the following day. Ballistics reports matched that weapon to two shell casings recovered at the crime scene. DNA evidence proved that petitioner's DNA was the major source on a sweater recovered from the bowling alley on the night in question. Other witnesses testified that petitioner's car matched the description of the one seen at the bowling alley on the night of the shootings.

Even if we were to assume that evidence of petitioner's nickname on a television monitor at the bowling alley constituted inadmissible hearsay and that its admission was error, the error was most certainly harmless.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.*