## ELVARD S. GENERETTE *v.* STATE OF MARYLAND

[No. 261, Initial Term, 1967.]

*Decided December 5, 1967.*

The cause was submitted to ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and DIGGES, J., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*Milton B. Allen* (*Harry A. Cole* on brief) for appellant.

*Alan M. Wilner, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

The Appellant, Elvard S. Generette, after entering pleas of "not guilty", was convicted in non-jury trials in the Criminal Court of Baltimore of two separate charges of robbery with a dangerous and deadly weapon. On September 23, 1966, Judge Joseph L. Carter sentenced the Appellant to twenty years in the Maryland Penitentiary in each case, the sentences to be served consecutively.

In the first case (Indictment No. 1776/66), one Jerome Wiggins, a bus driver for the Baltimore Transit Company, testified that on February 23, 1966, at approximately 10:10 P.M., he was driving his bus in the vicinity of North Hilton Street in Baltimore City when a man, whom he identified in court as the Appellant, boarded his bus, drew a gun and demanded his money. The robber extracted approximately seventy-two dol-

lars ($72.00) from Wiggins, placed the money in a brown paper bag, ordered the bus stopped, and hastily departed on foot. There were no other passengers on the bus during the robbery.

Approximately three weeks later Wiggins saw the Appellant in a Baltimore restaurant. He placed a call to his employer who, in turn, notified the police. The police then instructed Wiggins what to do if he should see the Appellant again. About a month later, Wiggins saw the Appellant in the same restaurant. This time he called the police who arrived shortly after the Appellant had, under Wiggins' watchful eye, boarded a bus. The police, accompanied by Wiggins, stopped the bus and arrested the Appellant on the strength of Wiggins' on-the-spot identification. Wiggins subsequently identified the Appellant in a police lineup and, as noted above, pointed to him in court as the robber.

The Appellant, after admitting to a rather extensive criminal record, which included several larcenies, testified, without an alibi, that he did not commit the robbery. He asserted that gambling was his principal means of support.

In the second case (Indictment No. 1777/66), Charles Zimmerman, also a bus driver for the Baltimore Transit Company, testified that on March 4, 1966, at about 4:12 A.M., he was driving his bus in the vicinity of Franklin and Evergreen Streets in Baltimore City when a man, whom he identified in court as the Appellant, boarded the bus, drew a gun and demanded his money. Having taken approximately forty-seven dollars ($47.00), the robber fled on foot. As in the first case, there were no other passengers on the bus during the robbery and the prosecuting witness identified the Appellant both in a police lineup and in court.

Unable to account for his whereabouts on the date of the robbery, the Appellant, on direct examination, stated "I don't know where I was at, but I know I wasn't where this fellow (Zimmerman) said I was at."

The record indicates that the State had originally charged the Appellant with the January 1966 robbery of one William Stanton, also a bus driver.

Stanton, like Wiggins and Zimmerman, had picked the Appellant out of the police lineup as the man who had robbed him.

It was later found, however, that the Appellant was incarcerated in the Baltimore City Jail on the date Stanton was robbed. Accordingly, the State entered a *nol pros* to the indictment (No. 1775/66).

The Appellant makes the following contentions:

1. The circumstances surrounding the identification of the Appellant at the trial were unfair and unreliable.
2. The suppression of evidence by the prosecution denied the Appellant due process of law.

In support of his first contention the Appellant correctly asserts that Wiggins and Zimmerman identified him at the lineup with Stanton whose identification was clearly mistaken and that Wiggins had a brief discussion with Stanton in the hallway outside the courtroom prior to the trial. The Appellant contends that Wiggins' and Zimmerman's identifications were, thereby, "tainted," and that the "influence Stanton had on Wiggins and Zimmerman, no matter how slight, would negate any reliableness and credibility" attached to their identifications. We do not agree. The record indicates that Wiggins had twice identified the Appellant in a restaurant prior to his arrest and that he had again identified him for the police at the time of arrest. The subject lineup was, then, a product of Wiggins' earlier identifications, all of which took place prior to any reported conversation with Stanton. Likewise, Wiggins denied conversing with Stanton prior to his attending the lineup, and stated that while at the lineup, he and Stanton occupied different rooms. On the record, then, Wiggins' only relevant conversational contact with Stanton took place prior to the trial in the hallway outside the courtroom. The content of that discussion was neither asked about nor disclosed at trial. In short, the Appellant's contention is an unsupported inference drawn from an evidentiary vacuum.

Secondly, the Appellant contends that the State "surreptitiously suppressed" Stanton's "role in implicating Appellant Generette in the three related indictments."

The three crimes for which the Appellant was indicted arose, not from a single transaction, but from an equal number of unrelated, though similar, incidents. Stanton's testimony, if of-

502

fered, would have been patently objectionable since it would have done no more than implicate the Appellant in another crime for which he was not then on trial. *Presley v. State,* 224 Md. 550; *Avery v. State,* 121 Md. 229. The State suppressed no evidence bearing on the Appellant's guilt or sentence by not offering Stanton as a witness.

In support of his contention of suppression the Appellant cites, *inter alia,* the inapposite cases of *Brady v. Maryland,* 373 U. S. 83; *Barbee v. Warden,* 331 F. 2d 842; *United States v. Wilkins,* 326 F. 2d 135; and *Giles v. Maryland,* 17 L. Ed. 2d 737. The evidence held to be suppressed in those cases was, unlike that in the instant case, related to the crime for which the defendant was being tried.

In concluding, it deserves mention that the Appellant had full knowledge of the facts and circumstances surrounding Stanton's role, the mistaken identification, and the *nol pros* prior to his trial.

*Judgment affirmed.*